**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| **SHERITA JOHNSON** on behalf of herself and others similarly situated, | ) | |
| | ) | Case No.: ________________ |
| Plaintiff, | ) | |
| vs. | ) | **JURY TRIAL DEMANDED** |
| **ACCURATE BACKGROUND, LLC**, | ) | |
| | ) | **CLASS ACTION** |
| Defendant. | ) | |

# COMPLAINT

Plaintiff Sherita Johnson ("**Plaintiff**"), by the undersigned attorneys, on her own behalf and behalf of all others similarly situated, upon personal knowledge with respect to herself, and upon information and belief as to all other matters, brings this class action against Defendant Accurate Background, LLC, ("**Defendant**"), pursuant to the Fair Credit Reporting Act ("**FCRA**"), 15 U.S.C. § 1681 *et seq*., and alleges as follows:

## NATURE OF THE ACTION

1. The need for consumer reporting agencies to adopt reasonable procedures to ensure that the information they disseminate is accurate, up-to-date, and furnished only to users for legally permissible purposes is more critical than ever. Today, approximately three billion consumer credit reports are issued annually in the United States. Moreover, every month, credit reporting agencies receive roughly 1.3 billion updates regarding 200+ million consumer files—an average of fifteen changes per file. National Consumer Law Center, *Fair Credit Reporting* § 1.2.2 (10th ed. 2022), *updated at* www.nclc.org/library.

2. In enacting the FCRA in 1970, Congress expressly acknowledged "[t]here is a need to insure *(sic)* that consumer reporting agencies exercise their grave responsibilities with fairness,

impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4).

3. Congress was particularly concerned with the expanding practice of "credit reporting," noting in a Senate Report accompanying the new legislation that a consumer's future employment could be jeopardized by an incomplete (or otherwise erroneous) credit or consumer report. S. Report 91-517, at 4 (1970).

4. Consequently, prior to providing a consumer report to an employer, the FCRA now requires consumer reporting agencies to: (i) make a reasonable effort to verify the identity of a new prospective user of the information and the uses certified by such prospective user; and (ii) follow reasonable procedures designed to assure maximum possible accuracy of the information in the consumer report. *See* 15 U.S.C. § 1681e(a) and (b).

5. Moreover, at the time such public record information is reported to the user of such consumer report, the FCRA requires consumer reporting agencies to notify the consumer that such information is being reported. *See* 15 U.S.C. § 1681k.[1]

6. Despite these and other prohibitions, Defendant violated the FCRA by, *inter alia*: (i) failing to contemporaneously notify Plaintiff and other consumers of Defendant's reporting of public record information to end users; and (ii) producing consumer reports regarding Plaintiff and other consumers that were incomplete, not up to date, inaccurate, and/or misleading.

7. Upon information and belief, Defendant's actions were taken according to company policy and procedure in violation of the FCRA and affect each proposed class member. As such, Plaintiff, on her own behalf and behalf of all others similarly situated, files this Class Action Complaint seeking statutory damages, punitive damages, costs and attorneys' fees, and all

[1] Relatedly, the FCRA requires consumer reporting agencies to clearly and accurately disclose all information in a consumer's file at the time of a consumer's request. *See* 15 U.S.C. §1681g.

other relief available pursuant to the FCRA.

## PARTIES

8. Plaintiff Sherita Johnson is, and was at all relevant times, a resident of Wisconsin. Plaintiff was the subject of a consumer report[2] produced by Defendant for employment purposes.

9. Defendant, a consumer reporting agency[3] as defined by the FCRA, is engaged in the business of producing consumer reports for employment purposes and can be served through its registered agent, C T Corporation System, at 330 N. Brand Blvd, Glendale, CA 91203. Upon information and belief, Defendant has produced more than 5000 consumer reports for employment purposes in the past two years.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States.

11. This Court has personal jurisdiction over Defendant because Defendant operates in this District and Defendant's contacts with this District are so continuous and systematic as to render Defendant essentially at home in this District. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).

---

[2] The FCRA defines "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for …(B) employment purposes[.]" 15 U.S.C. § 1681(d)(1)(B).

[3] The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681(a)(f).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this District, and Defendant is subject to personal jurisdiction here.

**LEGAL AUTHORITY**

13. The FCRA is "undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." Cortez v. TransUnion, 617 F.3d 688, 722 (3d Cir. 2010).

14. Section 1681e(a) of the FCRA requires that consumer reporting agencies, inter alia, "maintain reasonable procedures designed to avoid violations of section 1681c of this title and to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title." 15 U.S.C. § 1681e(a). It further states:

> These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. Every consumer reporting agency shall make a reasonable effort to verify the identity of a new prospective user and the uses certified by such prospective user prior to furnishing such user a consumer report. No consumer reporting agency may furnish a consumer report to any person if it has reasonable grounds for believing that the consumer report will not be used for a purpose listed in section 1681b of this title.

*Id.*

15. Section 1681e(b) of the FCRA requires consumer reporting agencies to satisfy the following standard when producing consumer reports:

> Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

15 U.S.C. § 1681e(b).

16. In demanding maximum possible accuracy, the FCRA recognizes the significant impact of consumer reports on consumers, as well as ensures the procedures used to prepare the

reports by consumer reporting agencies will be reasonable.

17. Courts recognize two forms of inaccurate information in consumer reports: (i) patently inaccurate information; and (ii) materially misleading information. Information is "materially misleading" if it is misleading in such a way and to such an extent that it can be expected to adversely affect employment decisions.

18. Section 1681k of the FCRA requires consumer reporting agencies that furnish consumer reports for employment purposes which contain matters of public record likely to have an adverse effect on the ability of consumers to obtain employment to:

> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
>
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k.[4]

19. In summary, in conjunction with and contemporaneous to their reporting of public record information to end users, 15 U.S.C. § 1681k demands that consumer reporting agencies: (i) notify consumers that such information has been reported; and (ii) maintain and follow strict procedures designed to ensure the information is both accurate and complete. *See id.*

---

[4] Moreover, should they directly or indirectly receive notice from a consumer that the consumer's file contains incomplete and/or inaccurate information, consumer reporting agencies must conduct a reasonable investigation within 30 days at no cost to the consumer. *See* 15 U.S.C §1681i(a)(1)(A). The information must be deleted from the consumer's file if found to be inaccurate. *Id.*

## FACTUAL ALLEGATIONS

20. Defendant produces background screening and other consumer reports for end users for employment purposes for a fee. The consumer reports produced by Defendant contain items which are matters of public record and are likely to have an adverse effect on a consumer's ability to obtain employment.

21. Upon information and belief, Defendant knows it must comply with the FCRA in producing and providing consumer reports.

22. In July of 2026, Plaintiff applied for employment with Ross Stores ("Ross") in Wisconsin.

23. Upon information and belief, a written agreement addressing the production of consumer reports exists between Defendant and Ross which requires Defendant to produce reports that comply with the FCRA.

24. After a series of interviews, Plaintiff was offered employment with Ross in July of 2026.

25. During the interview process and prior to the job offer, Plaintiff had told Ross of her criminal history and her rehabilitative efforts and was assured a misdemeanor record would not prevent her from working for Ross.

26. Ross ordered Plaintiff's Consumer Report from Defendant on July 23, 2026.

27. On July 24, 2026, Plaintiff provided Defendant notice of her criminal history and clearly indicated that the charges were misdemeanors.

28. Plaintiff further noted in the July 24, 2026 email that the misdemeanors were lower level class B misdemeanors.

29. Wisconsin does not sentence an individual guilty of a misdemeanor to prison.

30. On July 30, 2026, Defendant provided Ross with Plaintiff's Consumer Report.

31. On July 30, 2026, Plaintiff was informed that Defendant was considering taking adverse action based on information contained in her Consumer Report produced by Defendant.

32. The Consumer Report produced by Defendant contains both patent and materially misleading inaccuracies.

33. Defendant prepared, compiled, and furnished a consumer report concerning Plaintiff that inaccurately represented that Plaintiff had been sentenced to prison.

34. The criminal offense for which Plaintiff was convicted did not authorize a prison sentence under the applicable law.

35. Accordingly, Defendant's representation that Plaintiff was sentenced to prison was factually inaccurate and materially misrepresented the nature and severity of Plaintiff's criminal disposition.

36. By reporting that Plaintiff had received a prison sentence when such a sentence was not legally available for the offense of conviction, Defendant materially distorted Plaintiff's criminal history and presented Plaintiff as having a more severe criminal record than the actual record supported.

37. Defendant's publication of an inaccurate criminal background report falsely representing that Plaintiff was sentenced to prison has adversely affected Plaintiff's reputation, dignity, and standing in society by portraying Plaintiff as having committed an offense warranting a sentence of prison time when no such sentence was legally authorized for the offense of conviction.

38. The inaccurate representation conveys a materially false and misleading impression concerning the nature and severity of Plaintiff's criminal history and the corresponding

punishment, thereby subjecting Plaintiff to an unwarranted stigma and diminishing the regard in which Plaintiff may be held by prospective employers, business associates, members of the community, and other persons who receive or rely upon the report.

39. By falsely attributing a prison sentence to Plaintiff, Defendant has distorted the public and professional perception of Plaintiff's character, reliability, fitness for employment and standing in society, impairing Plaintiff's ability to participate in ordinary social, professional, and economic activities on equal terms with others.

40. The foregoing inaccuracy exposes Plaintiff to unjustified suspicion, prejudice, and adverse judgments based upon a criminal disposition that does not accurately reflect the actual sentence for the offense.

41. As a direct and proximate result of Defendant's inaccurate reporting, Plaintiff has suffered, and continues to suffer, injury to reputation, diminished standing in the community, humiliation, emotional distress, and impairment of professional and economic opportunities.

42. Plaintiff's Consumer Report inaccurately states that Plaintiff was sentenced to 90 days in prison and given credit for two days of prison time.

43. Plaintiff's Consumer Report inaccurately states that Plaintiff was sentenced to 30 days in the House of Corrections.

44. Plaintiff's Consumer Report fails to list Plaintiff's actual sentence and that the Court awarded Huber privileges.

45. Plaintiff's Consumer Report inaccurately reported that Plaintiff was sentenced to prison and failed to list a single rehabilitative portion of the sentence.

46. Reporting that Defendant was sentenced to prison for a crime that is not eligible for a prison sentence is inaccurate.

47. Plaintiff's Consumer Report does not provide the reader with complete and up to date information regarding Plaintiff's criminal charge.

48. The Consumer Report produced by Defendant omits information that a reasonable employer would need to know when making an employment decision.

49. The failure to properly state the criminal sentence in the report is evidence that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information concerning Plaintiff in violation of 15 U.S.C. § 1681e(b).

50. The Consumer Report produced by Defendant damaged Plaintiff's livelihood by impairing Plaintiff's ability to secure future employment.

51. The Consumer Report produced by Defendant harmed Plaintiff's standing in society by associating Plaintiff with more severe criminal conduct and subjecting her to the stigma and negative social consequences that accompany such an association.

52. Defendant's knowing or reckless publication of false and misleading information regarding Plaintiff's criminal history to a third party constitutes conduct analogous to defamation *per se*, in that it falsely imputed criminal conduct to Plaintiff and harmed her reputation, as well as directly impaired Plaintiff's ability to obtain employment.

53. Defendant's actions caused Plaintiff to suffer embarrassment, anxiety, emotional distress, and mental anguish, including, but not limited to, stress associated with the loss of employment and the stigma of being falsely associated with severe criminal activity.

54. It is an unreasonable procedure to report prison time on criminal records that are not severe enough to be eligible for a prison sentence.

55. It is an unreasonable procedure to fail to delineate between jail and prison when reporting punishments to a third party.

56. The Consumer Report produced by Defendant, is inaccurate, materially misleading, incomplete, and not up to date. Therefore, Defendant's production of the Consumer Report violates 15 U.S.C. §1681e(b).

57. The Consumer Report produced by Defendant damaged Plaintiff's livelihood.

58. The Consumer Report produced by Defendant caused Plaintiff to lose a job opportunity and wages that Plaintiff would have otherwise earned.

59. The manner in which the Defendant created Plaintiff's Consumer Report is consistent with Defendant's policies and procedures for creating consumer reports for employment purposes.

60. Defendant's violations of the FCRA, combined with its knowledge of the requirements of the FCRA, are evidence that Defendant was in negligent and reckless disregard of the law.

61. Defendant's actions fundamentally undermined the fairness and transparency the FCRA was designed to protect and caused Plaintiff to suffer both tangible losses (including the loss of a good salary and benefits) and intangible injuries (such as loss of dignity, uncertainty about the future, harm to reputation, and frustration over being denied a fair process).

## CLASS ACTION ALLEGATIONS

62. **Class Definitions**: Pursuant to Federal Rule of Civil Procedure 23, Plaintiff proposes the following class definitions:

> **15 U.S.C. § 1681e(b) Class:** All individuals who were the subject of one or more consumer reports that inaccurately reported prison instead of the actual disposition for the period of the previous two years prior to the date of filing, through the conclusion of this matter.

63. As used herein, the term "Proposed Class" shall refer to the aforementioned putative class.

64. Plaintiff reserves the right to amend the class definition before the Court determines whether certification is appropriate, if discovery or further investigation reveals that the Proposed Class should be expanded or otherwise modified.

65. Excluded from the Proposed Class are: (i) Defendant, its parents, subsidiaries, affiliates, officers, and directors; (ii) those who make a timely election to be excluded from the Proposed Class, and (iii) any member of the judiciary presiding over this action.

66. **Numerosity**: The Proposed Class is so numerous that joinder of all members of the class is impracticable. Defendant routinely produces consumer reports on individuals to end users for employment purposes. In doing so, Defendant fails to comply with the certification, accuracy, and notice mandates of the FCRA. Upon information and belief, Defendant has produced more than 5000 consumer reports using the same policies and procedures during the relevant period. Accordingly, Plaintiff estimates that at least 1000 individuals would fall within the definitions of the Proposed Class during the relevant time period. Members of the Proposed Class can be identified through Defendant's records.

67. **Common Questions of Law and Fact**: Virtually all issues of law and fact in this class action predominate over any questions affecting individual members of the Proposed Class. The questions of law and fact common to the Proposed Class include:

a. Whether Defendant maintains reasonable procedures that are designed to ensure maximum possible accuracy in the consumer reports produced;

b. Whether Defendant produced reports that contain inaccuracies in violation of 15 U.S.C. § 1681e(b);

c. Whether Defendant's violations of the FCRA were in negligent

and/or reckless disregard of the FCRA; and

d. The proper measure of damages.

68. **Typicality**: Plaintiff's claims are typical of the members of the Proposed Class in that Plaintiff is entitled to relief under the same cause of action and upon the same facts. Defendant is a consumer reporting agency that produces consumer reports to end users. Defendant produces the reports in violation of the mandates of the FCRA. Accordingly, the FCRA violations suffered by Plaintiff are typical of those suffered by other members of the Proposed Class. Finally, Defendant treated Plaintiff consistent with other members of the Proposed Class in accordance with Defendant's standard policies and practices.

69. **Adequacy of Representation**: Plaintiff is an adequate representative of the Proposed Class because Plaintiff's interests coincide with, and are not antagonistic to, the interests of the members of the Proposed Class. Plaintiff has retained attorneys competent and experienced in FCRA class action litigation. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of all members of the Proposed Class.

70. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. Moreover, questions of law and fact common to the members of the Proposed Class overwhelmingly predominate over individual questions that may arise. Specifically, Defendant's conduct as described herein stems from common and uniform policies and practices which resulted in common violations of the FCRA.

71. Even if members of the Proposed Class were able or willing to pursue individual cases, a class action would still be preferable given that a multiplicity of individual actions would likely increase the expense and time of litigation in light of the complex legal and factual

controversies presented. Conversely, a class action provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision before a single trier of fact, and would result in reduced time, effort, and expense for all parties and the Court, and ultimately, the uniformity of decisions.

72. Plaintiff seeks statutory damages, punitive damages, costs and attorneys' fees, and all other relief available pursuant to the FCRA on behalf of all members of the Proposed Class.

73. Plaintiff intends to send notice to all members of the Proposed Class to the extent required by Fed. R. Civ. P. 23. The names and addresses of the members can be identified through Defendant's records.

**COUNT I**
**15 U.S.C § 1681e(b) VIOLATIONS**
**(On Behalf of Plaintiff and the 15 U.S.C. § 1681e(b) Class)**

74. Plaintiff incorporates the foregoing paragraphs 1-73 of this Class Action Complaint as if fully set forth herein.

75. The consumer reports produced by Defendant regarding Plaintiff and the 15 U.S.C. § 1681e(b) Class contained information that was patently inaccurate and materially misleading.

76. A reasonable employer would be misled by the consumer reports produced by Defendant regarding Plaintiff and the 15 U.S.C. § 1681e(b) Class.

77. The consumer reports produced by Defendant regarding Plaintiff and the 15 U.S.C. § 1681e(b) Class casts them in a false light.

78. The consumer reports prepared by Defendant regarding Plaintiff and the 15 U.S.C. § 1681e(b) Class reported a prison sentence and placed the stigma of prison on consumers who were not subjected to a term of prison.

79. The consumer reports prepared by Defendant regarding Plaintiff and the 15 U.S.C.

§ 1681e(b) Class failed to report the actual disposition received by the consumers.

80. A reasonable employer would consider an applicant's criminal disposition when evaluating the applicant for a job.

81. Defendant's inaccurate and misleading consumer reports cast Plaintiff and the 15 U.S.C. § 1681e(b) Class in a more unfavorable light than they would have been if Defendant had complied with the FCRA.

82. Defendant's violations of the FCRA were negligent and/or reckless.

83. Defendant's negligent and/or reckless conduct is reflected by, among other things, the following facts:

a. Defendant has access to legal advice;

b. Defendant had access to public information that proved the consumer reports regarding Plaintiff and the 15 U.S.C. § 1681e(b) Class were inaccurate and misleading;

c. Defendant produced consumer reports concerning Plaintiff and the 15 U.S.C. § 1681e(b) Class that omitted information which would have been beneficial to them; and

d. Defendant committed multiple violations of the FCRA by producing consumer reports regarding Plaintiff and the 15 U.S.C. § 1681e(b) Class that were inaccurate.

84. Plaintiff and the 15 U.S.C. § 1681e(b) Class are entitled to statutory damages of not less than $100 and not more than $1000 for each of Defendant's violations pursuant to 15 U.S.C. §1681n(a)(1)(A).

85. Plaintiff and the 15 U.S.C. § 1681e(b) Class are also entitled to punitive damages for Defendant's violations pursuant to 15 U.S.C. §1681n(a)(2).

86. Plaintiff and the 15 U.S.C. § 1681e(b) Class are further entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. §1681n(a)(3).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, on behalf of herself and those similarly situated, respectfully requests that this Court enter judgment against Defendant as follows:

a. Certifying the 15 U.S.C § 1681e(b) Class under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

b. Designating Plaintiff as class representative and designating Plaintiff's undersigned counsel as counsel for the Proposed Class;

c. Finding that Defendant committed multiple, separate violations of the FCRA as to each Proposed Class Member;

d. Finding that Defendant negligently or recklessly violated the provisions of the FCRA.

e. Finding that Defendant acted negligently and/or in deliberate or reckless disregard of Defendants' obligations under the FCRA and the rights of Plaintiff and the Proposed Class;

f. Awarding statutory damages as provided by the FCRA;

g. Awarding punitive damages as provided by the FCRA;

h. Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

i. Granting other and further relief, in law or equity, as this Court may deem just, equitable, and/or appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all Counts so triable.

Dated: October 30, 2026

Respectfully Submitted,

/s/ *Jayson A. Watkins*

Jayson A. Watkins MO 61434
**SIRI & GLIMSTAD LLP**
2300 Main Street, Suite 900
Kansas City, Missouri 64108
Direct: 816-281-7162
Email: jwatkins@sirillp.com

*Attorneys for Plaintiff*